1  DONNA D. MELBY (SB# 86417)
   donnamelby@paulhastings.com
2  DANIEL PRINCE (SB# 237112)
   danielprince@paulhastings.com
3  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   515 South Flower Street
4  Twenty-Fifth Floor
   Los Angeles, CA 90071-2228
5  Telephone: (213) 683-6000
   Facsimile: (213) 627-0705
6
   Attorneys for Plaintiff
7  TOYO TIRE HOLDINGS OF AMERICAS INC., as successor in interest to
   TOYO TIRE INTERNATIONAL, INC.
8
                    UNITED STATES DISTRICT COURT
9
                    CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| TOYO TIRE HOLDINGS OF AMERICAS INC., a California corporation, as successor in interest to TOYO TIRE INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>CONTINENTAL TIRE NORTH AMERICA, INC., an Ohio corporation, as successor in interest to GENERAL TIRE, INC.; YOKOHAMA CORP. OF AMERICA, a California corporation; GTY TIRE CO., an Ohio general partnership; and DOES 1-100, inclusive,<br><br>Defendants. | Case No. SACV10-52-JVS(RNBx)<br><br>Assigned for All Purposes to:<br>HON. JAMES V. SELNA<br>DEPT. 10C<br><br>**PLAINTIFF TOYO TIRE HOLDINGS OF AMERICAS INC.'S MEMORANDUM REGARDING DEFENDANTS' RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND TO THE DECLARATIONS OF BARBARA HOPPA**<br><br>Date: August 4, 2010<br>Time: 10:00a.m.<br>Dept: 10C<br>Judge: Hon. James V. Selna |

**REDACTED COPY**

## I. INTRODUCTION

At the July 8, 2010 hearing on Plaintiff Toyo Tire Holdings of Americas, Inc.'s ("Toyo-US") motion for preliminary injunctive relief, the Court made clear that, if it were to issue the injunction, a key part of such ruling would be the fulfillment of Toyo-US's outstanding TBR orders from mid-January to the present:

- "What I contemplate is imposing a requirement to report to the Court within seven days *the partnership's timetable for fulfilling the backorders*." Tr., pp. 53:24-54:1 (emphasis added).

- "What you are going to come back with if I grant the injunction is a report spelling out *a timetable for satisfying the outstanding orders*." Tr., p. 54:14-18 (emphasis added).

- "I intend to impose an obligation to *satisfy in a reasonable manner the outstanding orders giving [Toyo-US] priority vis-à-vis [Defendants'] orders* on the basis of when those orders were placed. In other words, ... if there are outstanding orders from ... Toyo[-US], those get priority. That's what I am contemplating." Tr., pp. 54:22-55:5 (emphasis added).

- "Assuming I enter an injunction, we need a concrete statement of what -- *how you propose to satisfy the backorders*." Tr., p. 55:13-15 (emphasis added).

Subsequently, in the Court's July 9, 2010 Final Order Granting in Part and Denying in Part Plaintiff's Application for Preliminary Injunction (the "July 9, 2010 Order"), in pertinent part, the Court directed Defendants Continental Tire North America, Inc. ("Continental-US") and Yokohama Corporation of America ("Yokohama-US") (collectively, "Defendants") to:

"[S]ubmit a report, verified by one or more officers or managing agents, *setting forth a timetable for satisfying Toyo's outstanding TBR orders, which shall include approximate dates of deliveries and quantities*. It is the Court's intent that the Defendants put in place a scheme for delivery which approximately replicates historic delivery rates for the period 2008-2009.

1      Where necessary to achieve this, the Defendants shall give priority to Toyo's
2      outstanding orders over orders by the Defendants of a later date."
3  See Docket Entry No. 158 (emphasis added). And, in its July 13, 2010 Order
4  Granting Plaintiff Toyo Tire Holdings of Americas Inc.'s Motion for a Preliminary
5  Injunction (the "July 13, 2010 Order"), the Court stated a similar directive, with
6  further detail. See Docket Entry No. 181.
7      Based on the above, Defendants cannot reasonably argue that there was
8  ambiguity with respect to the Court's directive to satisfy Toyo-US's outstanding
9  TBR orders. Notwithstanding the Court's admonitions during the July 8, 2010
10 hearing and the plain language of its Orders, the July 23, 2010 Declaration of
11 Barbara Hoppa ("Hoppa Declaration"), including "Scenario 1" and "Scenario 2"
12 attached thereto, made *no* attempt to satisfy Toyo-US's outstanding TBR orders.
13 See Docket Entry No. 238. Rather, as stated in Toyo-US's Preliminary Response,
14 the July 23, 2010 Hoppa Declaration was riddled with a variety of pretextual
15 excuses as to why it may have been "difficult" to comply with the Court's Orders.
16 See id. Defendants' allegations of difficulty were belied by the Hoppa Declaration
17 itself, as Ms. Hoppa indicated that Defendants' purported challenges could be
18 attributed to the facts that [REDACTED]
19 and that [REDACTED]
20
21 July 23, 2010 Hoppa Decl., ¶ 30.
22 Put simply, Defendants ignored the Court's express language because they intended
23 to use the TBRs that they had confiscated from Toyo-US to satisfy their own
24 customers.[1]

---

[1] Defendants challenged Toyo-US's assertion that the termination of Toyo-US's supply of GTY-manufactured TBRs had frustrated, and would continue to frustrate, Toyo-US's customer relationships. Interestingly, Defendants complained that compliance with the Court's Orders (in which Defendants would have to re-incorporate Toyo-US into the production process) would lead to a "decrease in customer satisfaction" because Defendants, respectively, would have fewer TBRs to provide to their own customers.

Defendants' allegations of difficulty also have been undermined by their submission of August 2, 2010. Prompted by the Court's July 28, 2010 Order to Show Cause Why Defendants Should Not Be Held in Contempt (the "July 28, 2010 Contempt Order"), on August 2, 2010, Defendants filed a supplemental Hoppa Declaration, in which Defendants proposed a "Scenario 3" that is materially superior to Scenarios 1 or 2—in that Scenario 3 attempts to satisfy Toyo-US's outstanding TBR orders and it provides estimated delivery dates and quantities of TBRs for supply to Toyo-US. While Toyo-US continues to disagree with several of the assertions of the July 23, 2010 Hoppa Declaration (and it continues to reserve all rights in connection therewith), and although Toyo-US still is considering Scenario 3 (which Toyo-US received on August 2, 2010), preliminarily, Toyo-US believes that Scenario 3 provides a substantial step in the right direction and is generally acceptable to Toyo-US, subject to the qualifications set forth below.

## II. DEFENDANTS' LACK OF CANDOR

Defendants note that the Court scheduled the August 4, 2010 contempt hearing *sua sponte*. *See* Defendants' Resp., p. 1. As such, Toyo-US does not take a position regarding whether the Court should find Defendants in contempt of its Orders. That said, Toyo-US notes the following:

- It is undisputed that neither Scenario 1 nor Scenario 2 contemplated *any* provision by which Toyo-US's outstanding TBR orders would be satisfied. Scenario 1 and Scenario 2 purported to restore Toyo-US's production of GTY-manufactured TBRs to [REDACTED] units per month. *See* Docket Entry No. 88, June 22, 2010 Declaration of John F. Hagan, Ex. C; Docket Entry No. 126, July 7, 2010 Declaration of John F. Hagan, Ex. A.

- Defendants attempt to justify their failure to comply with the Court's Orders by seizing on the Court's language that the production of TBRs should approximate historic delivery rates for the years of 2008-2009. However,

Defendants' scenarios did not include quantity information and delivery dates for satisfaction of outstanding TBRs.[2]

- Defendants contend that Toyo-US submitted its August 2010 TBR order in "bad faith." See Defendants' Resp., p. 3. This is incorrect. First, Toyo-US's August 2010 TBR order provided the precise information that Defendants sought. In her July 19, 2010 e-mail, Ms. Hoppa specifically requested that Toyo-US provide its "***requirements based on the oldest from January's unfilled orders***[.]" July 23, 2010 Hoppa Decl., Ex. B (emphasis added). Toyo-US's August 2010 TBR order provided Toyo-US's TBR requirements based on the oldest unfilled orders from January 2010 to the present, and that amount was ▌ TBRs. See id., Ex. D. Moreover, in John Hagan's July 22, 2010 letter, Toyo-US explained that it submitted the August 2010 TBR order to "make clear that Toyo-US is not waiving its right to obtain [the ▌ ] TBRs and that GTY has an obligation to satisfy Toyo-US's outstanding and long overdue TBR orders." August 2, 2010 Hoppa Decl., Ex. A. Defendants neglected to advise the Court that they received Mr. Hagan's July 22, 2010 letter **before** they submitted the July 23, 2010 Hoppa Declaration to the Court—particularly given that Defendants filed the declaration after the due date on July 26, 2010. See Docket Entry No. 237. Defendants did not include or materially respond to Mr. Hagan's letter until their August 2, 2010 submission—only after Toyo-US highlighted the absence of such letter in its Preliminary Response.[3] See Docket Entry No. 238.

- Defendants contend that Toyo-US did not "timely" respond to the two scenarios that Defendants attempted to impose upon Toyo-US. See July 23, 2010 Hoppa Decl., ¶¶ 27-28; see also August 2, 2010 Hoppa Decl., ¶ 18. This claim is

---

[2] Defendants contend that historical delivery patterns may have been increased by the slimmest of margins, but given the Court's clear directive regarding the satisfaction of outstanding orders, this is insufficient.

[3] Defendant Yokohama-US already has been reprimanded by the Court for its lack of candor. See Docket Entry No. 101.

(REDACTED)

disingenuous and overlooks two key facts. First, the Court issued the July 9, 2010 Order on July 9, 2010, which was 13 days before Ms. Hoppa communicated the proposed scenarios to Toyo-US. It is unclear why Defendants waited so long to propose the scenarios to Toyo-US. Second, when Defendants realized that they were running out of time to comply with the Court's 14-day deadline, Defendants finally contacted Toyo-US regarding their two scenarios, but Defendants gave Toyo-US *less than three hours* to respond—even though that decision would impact Toyo-US's entire TBR segment in the United States and the consideration of the scenarios would involve several logistics, manufacturing, and/or sales personnel (some of whom have busy travel schedules and pressing matters to address on a daily basis). Nonetheless, Toyo-US provided a written response to Defendants' scenarios on the same day—July 22, 2010. See August 2, 2010 Hoppa Decl., ¶ Ex. A.

- Defendants' argument that they could not produce sufficient TBRs for supply to Toyo-US given the "mold" capacity is misleading. Ms. Hoppa acknowledged that ▮▮▮ Toyo-US molds had been returned to GTY as of July 20, 2010. See July 20, 2010 Hoppa Decl., ¶¶ 16, 37-39. The production scenarios (Scenario 1 and 2) provided in the July 23, 2010 Hoppa Declaration were based on the use of ▮▮ Toyo-US molds, even though ▮▮ molds Toyo-US molds were (are) available for production.

- Ms. Hoppa's claim that it took Toyo-US one week to return the molds to the GTY plant is a non-starter. See August 2, 2010 Hoppa Decl., ¶ 3. As provided in the July 23, 2010 Hoppa Declaration, Toyo-US worked with Ms. Hoppa to return the Toyo-US molds to the GTY plant in an expeditious fashion, even given the coordination with Toyo-US's third-party transportation and storage provider, the securing of a forklift to move the molds, and the delivery of the molds

to GTY within a few days (excluding the intervening weekend). See July 23, 2010 Hoppa Decl., ¶¶ 13-16.[4]

- Ms. Hoppa contends that a "complicating factor" pertaining to the number of TBRs that GTY could manufacture for Toyo-US relates to the eight molds that have not been returned to the GTY plant. This is misleading. As Defendants well know, Toyo-US was forced to remove its molds from the GTY plant and Toyo-US subsequently returned ▮ molds to Japan in an attempt to make up for the lost volume of some sizes of TBRs.[5] See, e.g., Docket Entry No. 110, June 20, 2010 Declaration of James Hawk ("June 20, 2010 Hawk Decl."), ¶ 27; Docket Entry No. 114, June 23, 2010 Declaration of Nobuhiko Watanabe, ¶¶ 16-17. Those ▮ molds have been re-machined to fit presses in Toyo-Japan's tire production facility. See, e.g., June 20, 2010 Hawk Decl., ¶ 27. In any event, the production of GTY-manufactured TBRs could be increased if all ▮ Toyo-US molds were placed in production as soon as possible. Defendants have not offered a material or manufacturing reason as to why Defendants cannot place all ▮ Toyo-US molds in production to manufacture TBRs for supply to Toyo-US.[6] Ms. Hoppa states in the July 23, 2010 Hoppa Declaration that it would be "costlier" to run all of Toyo-US's ▮ molds in the production process, but that is not a sufficient

---

[4] Moreover, the molds had to be removed, at Toyo-US's expense, at the demand of its once trusted partners. The expense for returning the molds also was borne by Toyo-US.

[5] Even Defendants' counsel, Mr. Werlin, recognized at the July 8, 2010 hearing that certain of the Toyo-US molds had been returned to Japan. See Tr., p. 53:14-16.

[6] To the extent that the production process would be more costly, that is because Defendants chose to modify the specifications after they purported to terminate Toyo-US's interest in the GTY Partnership. Thus, Toyo-US should not be forced to pay for any modifications that were made by Defendants and which Defendants seek to impose upon Toyo-US after they incorrectly attempted to extinguish Toyo-US's interest in the GTY Partnership in the first instance. On a related note, Toyo-US has requested financial documents and information (to which it is entitled as a GTY Partner) related to the 2010 standard cost and pricing per tire, but it has not yet received these documents—including documents reflecting GTY's 2010 budget plan, the 2010 pricing forecast, the 2010 standard cost per tire, year to date manufacturing and pricing variances by month, the 2009 audit report, the 2009 tax returns, and the 2010 Board Meeting Report.

technical or manufacturing reason as to why Defendants cannot place all of Toyo-US's molds in production. *See* July 23, 2010 Hoppa Decl., ¶ 39.

### III. CONSIDERING SCENARIO 3: FEASIBILITY

#### A. The "Priority" of Production Issue is Non Sequitur

Under the newly-produced Scenario 3, Defendants claim that they can produce a greater volume of TBRs but ***cannot*** comply ' ████████████████████████████. *See* Defendants' Resp., pp. 11-12. In addition, Ms. Hoppa urges that Defendants were not certain of Toyo-US's priorities for certain models of TBRs and that Toyo-US's ██████████████████████████████████████████████. August 2, 2010 Hoppa Decl., ¶¶ 7-9. This is a red herring and lacks foundation.

- First, Toyo-US's orders from mid-January through July 2010 put Defendants on notice of Toyo-US's needs with respect to certain models of TBRs.

- Second, the Court's July 13, 2010 Order specifically detailed, by TBR model, the Toyo-US product code, and the GTY product code, the models for which Toyo-US required immediate production.[7] *See* Docket Entry No. 181.

- Third, Toyo-US's August 2010 TBR order contained a column marked "Priority," which provided a ranking (in order of preference from 1-5) of each pattern and size of TBR (including the corresponding product code information) for which Toyo-US requested immediate production. *See* July 23, 2010 Hoppa Decl., Ex. D; *cf.* August 2, 2010 Hoppa Decl., ¶¶ 10-16.

- Fourth, Defendants' paternalistic overtures are not well-taken. Toyo-US does not need Defendants to attempt to determine which TBRs to produce and the "priority" in which such TBRs may be produced. ***Toyo-US has a simple***

---

[7] As the Court may recall, Toyo-US included a listing of the model numbers of specific TBRs when preparing a draft Order. Defendants objected to this clarification, but the Court overruled that objection because the "language adds specificity to the injunction, a need which Continental[-US] stresses[.]" Docket Entry No. 221.

*request—that Defendants place in production all of Toyo-US's 58 molds and run those molds continuously.* It has been more than six months and Toyo-US is entitled to *all* of the TBRs that may be produced using its available molds, regardless of their perceived "priority." The Court's July 9, 2010 and July 13, 2010 Orders provide that Toyo-US's TBRs orders should take priority over Defendants' TBR orders—not that some of Toyo-US's orders must give way to other of its orders.

### B. Scenario 3 Demonstrates That Defendants Can and Should Produce Over ___ TBRs Per Month for Toyo-US

In his July 22, 2010 letter, Mr. Hagan estimated that, based on the use of Toyo-US's ___ molds at the GTY plant, at low end, GTY can manufacture nearly ___ TBRs for supply to Toyo-US per month and that, at the high end, GTY can manufacture more than ___ TBRs per month for supply to Toyo-US. *See* August 2, 2010 Hoppa Decl., Ex. A. Following the Court's issuance of an order to show cause regarding a finding of contempt, Defendants acknowledged that it was (is) feasible (and safe) to re-incorporate Toyo-US into the production process. In fact, Defendants estimated that GTY could produce nearly ___ TBRs in August 2010 for Toyo-US (subject to some "ramp up" time, although this amount period should be relatively short, *see id.*); nearly ___ TBRs for Toyo-US in September; and more than ___ TBRs for Toyo-US in October. *See id.*, Ex. B. According to Defendants' schedule, the TBR production appears to taper off in November (nearly ___ TBRs) and December 2010 (nearly ___ TBRs) before commencing again in January 2011. While Toyo-US still is considering the details of Scenario 3, Toyo-US believes that Scenario 3 is acceptable in principle, subject to the proviso that the TBR production should remain at the peak level (nearly

1 TBRs) in November and December 2010.[8] Otherwise, Toyo-US reserves its
2 right to seek and obtain the remainder of its 2010 allocation in 2011, as necessary.[9]

## IV. CONCLUSION

Based on the foregoing, and in accordance with its initial review of Scenario 3 (as provided on August 2, 2010), GTY production of TBRs must begin immediately so as to address the multiple months of Toyo-US's outstanding TBR orders, pursuant to the Court's July 9, 2010 and July 13, 2010 Orders. The precise amounts of the TBR production and delivery dates should mirror the timeframe set forth in Scenario 3, subject to the proviso that TBR production shall be no less than ▮ TBRs per month in November and December 2010. Toyo-US shall retain its right to obtain its remaining 2010 allocation of TBRs in 2011, as necessary.

DATED: August 3, 2010

DONNA D. MELBY
DANIEL PRINCE
PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: /s/ Daniel Prince
DANIEL PRINCE

Attorneys for Plaintiff
TOYO TIRE HOLDINGS OF AMERICAS INC., as successor in interest to TOYO TIRE INTERNATIONAL, INC.

---

[8] The GTY factory would not have to "shut down" to solely manufacture TBRs for Toyo-US if GTY produced nearly ▮ TBRs for Toyo-US each month. See Tr., p. 55:6-13. Defendants would be able to obtain the remainder (nearly ▮ TBRs per month) to satisfy their own orders. In addition, under the Partnership Agreement, Continental-US operates a truck tire plant (separate from GTY, and which Continental-US failed to mention) in Mt. Vernon, Illinois, from which Defendants may obtain TBRs to compensate from any lost volume from GTY.

[9] As stated in Mr. Hagan's July 22, 2010 letter, Toyo-US has not agreed to any specification changes that Defendants purported to make after incorrectly deciding to terminate Toyo-US's interest in the GTY Partnership. See August 2, 2010 Hoppa Decl., Ex. A. While Toyo-US may agree to the chafer angle change (from ▮ ), Toyo-US does not consent to the use of ▮ a cost-cutting measure, as that may compromise the integrity of Toyo-US's products.